## No. 7012.

STATE EX REL. JOHN J. BARROW, SHERIFF, ET AL. VS. CHARLES L. FISHER, TREASURER.

Where the police jury of a parish join in an appeal from a judgment making peremptory a mandamus against the treasurer of the parish on account of alleged services rendered, and expenses incurred in behalf of the parish, no affidavit of interest is required of the police jury. The interest is patent on the face of the record.

It is the duty of the treasurer of the parish to register and he may be mandamused to register the claims of the sheriff for all expenses incurred by him on account of the arrest, confinement, and maintenance of persons accused of crime, and for *all* expenses whatever attending criminal proceedings, when the amount of such claims shall have been certified to as correct by the clerk of the court and the presiding judge thereof, and presented to the treasurer for registry within sixty days thereafter. But the treasurer is not bound to register claims for services, or expenses not rendered, or incurred in criminal proceedings, not even if certified to as correct by the clerk and presiding judge.

The sheriff of a parish can not be compelled to accept a certain sum, or sums of money in lieu of his fees of office, unless he has voluntarily contracted with the police jury to do so.

Neither the registry by the treasurer of an account against the parish, nor its indorsement by him under the statute, amounts to the issuance of scrip, or negotiable obligations of the parish.

The fact that no money is in the parish treasury when a proper claim for registry is presented to the treasurer is no reason why the claim should not be registered.

APPEAL from the Seventh Judicial District Court, parish of West Feliciana. *Yoist, J.*

*W. W. Leake* for relator and appellee.

*C. L. Fisher* for himself.

*Joseph L. Golsan,* district attorney *pro tem.,* for the police jury, intervenors and appellants.

The opinion of the court was delivered by

EGAN, J. In this proceeding by *mandamus,* relator seeks to compel Charles L. Fisher, treasurer of the parish of West Feliciana, to register certain claims which he alleges are due by the parish to him in his offi-

cial capacity of sheriff, for services rendered in criminal and other matters, for which the parish, under the law, is liable. The evidences of the indebtedness by the parish to him are shown by the certificates of the clerk of the court and district and parish judges of the parish.

The defendant, the treasurer of West Feliciana, for answer why the *mandamus nisi* should not be made peremptory, represents—

First—That the accounts against the parish have never been approved or allowed by the police jury, or according to law.

Second—Denies that the claims are legal and valid claims against the parish, or such claims as defendant is required by law to register as claims against the parish.

Third—That the police jury, of which the defendant is a ministerial officer, is vested with discretionary powers to approve, allow, and pay any and all claims against the parish, before said claims have been adjudicated judicially.

Fourth—That the law affords the relator adequate relief by the ordinary means to have his demands judicially determined.

Fifth—That the police jury in making up the annual budget of expenses for 1877 exercised discretionary powers, which are not the subject of judicial inquiry.

(a.) That in said tableau of expenses the sum of $600 was appropriated to pay the sheriff for all services in criminal matters, or in cases in which by law the parish is to pay for services rendered the parish or State, including all services rendered the police jury, as a salary.

(b.) Five hundred dollars was appropriated for maintenance of prisoners, or so much thereof as may be legally due upon account of sheriff, at twenty-five cents per prisoner per day.

(c.) Six hundred dollars was appropriated, or so much thereof as might be legally issued to pay contingent expenses.

Sixth—That no other levy or appropriation was made to pay the sheriff, except the salary of $600, and what might be legally due for maintenance of prisoners, and out of the contingent fund for contingent expenses.

Seventh—That the sheriff presented no bills for approval on account of salary as fixed by police jury. *Nor has he presented any other bills to police jury for approval.*

Eighth—That the police jury, the parish treasurer, and all the other officers of the parish are expressly prohibited from *issuing* any evidences of indebtedness, or to warrant for the payment of money from and after the first day of October, 1877, except against money actually in the treasury.

Ninth—And no officer of the parish can approve or cause the issuance of paper or evidences of indebtedness in excess of appropriations.

Tenth—That the several claims presented were erroneously and illegally approved by the clerk and the district and parish judges.

Eleventh—That the treasurer of the parish is not authorized to register any such claims unless approved by the police jury.

Twelfth—That the claims for serving road notices, besides being obnoxious to the objections above, are matters with which the police jury has concern, and not the clerk and several judges.

Thirteenth—That all the claims were erroneously approved after the first of October, 1877, there being no money in treasury.

Fourteenth—That defendant could not register said claims under express provisions of a prohibitory law; that by so doing he would not only render himself liable criminally, but would thereby be the instrument of the issuance of a lot of scrip, under the sanction of his official signature, which would have the effect of creating the belief in the public mind that there was money in the parish treasury, thus causing damage to individuals and the parish.

Fifteenth—Further, that the police jury have provided in their annual budget for 1877 for the collection of a tax to pay what they admitted to be due, and the list or tableau of expenses for which they have provided contains every thing they can provide for under the general laws, *and will fully come up to, if not exceed, the limitation as to the per centum which the laws have imposed.*

Sixteenth—That relator has not been irreparably damaged.

The *mandamus* was made peremptory, and the defendant has appealed.

---

### ON MOTION TO DISMISS APPEAL.

Before proceeding to consider the merits of this controversy we will first dispose of a motion to dismiss the appeal taken by the police jury who joined the defendant in the appeal. It is upon two grounds—

First—That there is no affidavit of interest as required by law.

Second—That they have not shown a direct pecuniary interest in the subject matter either by affidavit or otherwise.

Neither ground is well taken. No affidavit was necessary. The record discloses the interest of the parish which the police jury represents in the subject matter which is claims against the parish for alleged services rendered and expenses incurred. The interest is direct and pecuniary. The motion to dismiss is overruled.

---

### ON THE MERITS.

Section 1042 of the Revised Statutes of 1870 provides "that all expenses incurred in the different parishes of the State and in the city of New Orleans by the arrest, confinement, maintenance, and prosecution

of persons accused or convicted of crimes, their removal to prison, the pay of witnesses, jurors, and *all expenses whatever attending criminal proceedings*, shall be paid by the respective parishes in which the offense charged may have been committed, or by the city of New Orleans, as the case may be. Such expenses shall be paid by the parish treasurer or by the city treasurer, as the case may be, *after an account* thereof shall be duly certified to be correct by the *clerk of the court* and *the presiding judge thereof.*"

Section 2644, Revised Statutes, provides " that it shall be the duty of all persons having a claim against any parish which may have been allowed by the proper authorities to present such claim within sixty days from the date of its allowance to the parish treasurer. It shall be the duty of the treasurer to keep a well-bound book in which he shall make an entry describing the claim and date of such presentation, and *also indorse* his name across the back of the claim, with the day and date of such indorsement. No claim shall be received by him from any sheriff or collector of taxes which has not been so indorsed."

This is the registry which the relator sought, and the defendant refused to make for the reasons stated in his answer.

It was held in the case of Parker vs. Robertson, Auditor, 14 An. 249, at a time when, under the act of 1857, the expenses of criminal cases were paid by the State upon the certificate of the clerk and presiding judge, that the duties of the Auditor relative to accounts *for such expenses* were ministerial and imperative, and he must issue his warrant to the treasurer therefor.    The same doctrine was reiterated in regard to the statute now under consideration in the case of the city of New Orleans vs. Patton, Sheriff, 27 An. 168, although the court in the latter case gave to the certificates of those officers an effect of conclusiveness for all purposes which we refused to attribute to them in the State ex rel. Houston, Sheriff, vs. City of New Orleans, not yet reported. The duty of the parish treasurer to make the registry of claims which have been allowed *by the proper authorities* is clear and imperative under the statute, but as was very properly held in the cases just cited, it would be otherwise if the certificate of the clerk and judge should show upon its face—to which we will add, if the account to which they were appended should show—that they were not within the law, in other words, that the clerk and judge were not the proper authorities to allow, approve, or certify to the correctness of the accounts.

It is clear, under the statute read, that the clerk and judge were the proper officers to certify to the correctness of the sheriff's accounts so far as they are for services and expenses in criminal cases, whether for the maintenance of prisoners in jail, or otherwise. We have, however, been referred to no law and know of none which authorizes or requires

their certificates or approval of the relator's accounts "for serving road notices" of which there are three in the record, amounting respectively to $14, $34 80, and $17 30, a matter which has no connection with expenses in criminal cases, and which, therefore, was within the province of the police jury or its officers. It is admitted by the defendant that the accounts of relator were duly presented to him for registry before filing the petition, and that the police jury did not contract with him for a salary for his services in criminal cases under the statute relied upon by the relator and the police jury, but that he has always protested against and refused to receive the salary which they attempted to fix for that purpose. It appears that the police jury did, in accordance with section 2777 R. S. of 1870, fix the fees to be paid by the local authorities, but it does not appear that the fees charged by the relator are in excess of the rates so fixed, nor that the amounts charged for the maintenance of prisoners exceed those fixed by the police jury under article 73 of 1877. Neither is it properly deducible from the power conferred upon the police juries to fix the amount of their fees, or the rate of compensation for such maintenance of prisoners, that they are the proper authorities to approve accounts made according to the standard fixed by them. The law on that subject remains unchanged. It is, however, urged that act number 30, of the extra session of 1877, which authorizes police juries to contract for fixed and determined sums of money with those officers who receive fees, commissions, and mileage in lieu of such fees, commissions, and mileage as fixed by the laws then existing, compels such officers, and among them the relator, to accept whatever amount the police jury may choose to dictate. This would indeed be a singular contract, made with an officer without his consent, and with that alone of the other contracting party. It would indeed be unilateral. Read in connection with the other statutes on the same subject matter and with the general law of contracts, we think a fair interpretation of this statute is that it enabled the parishes to make contracts with officers for specific sums in lieu of fees of office, and to enforce them when made, but by no means enabled them to compel the other party to enter into the contract. The fact that the police jury undertook arbitrarily to fix an amount without his consent by no means forced the relator to accept it. Nor can it be said that the mere registry of an account against the parish, or its indorsement by the treasurer according to the statute as evidence that such registry has been made, is the issuing of script or negotiable obligations of the parishes within the sense and meaning of the law. The object of the registry and the manner of evidencing it is not that, but to enable the parish authorities to know the extent and character of its indebtedness, that they may make provision accordingly, as well as also to identify the

claim with a view, as is evident from the latter clause of the statute, to its possible use in the payment of taxes, or its ready collection otherwise. But were it the issuance of such evidence of indebtedness as argued by the defendant, it is specifically authorized and required by the statute. Again, it is argued that, because there was at the time no money in the treasury, the registry of the relator's claims could not be made. That would be a very good reason why *payment* should not, as it could not, be made, but not so registry. Suppose that the parish treasury should, as often happens, continue empty for more than sixty days after the certificates contemplated by S. 1042 of the R. S., does it follow that the provisions of section 2644, which positively requires that all claims against the parish shall be presented to the treasurer within sixty days from their being allowed by the proper authority shall be ignored and disregarded? And yet this must be so if the defendant's position be correct. Again, the argument would apply with equal or greater force against any claim allowed by the proper officer or authority, and yet it is the right of the claimant, and the positive injunction of the law, that such allowance or certificate be given or made. Our attention has been called in the brief of defendant to two items, one of $40 and one of $104 60, for serving notices on eighty jurors and mileage in so doing, respectively. These do not come within the provisions of the statute relied upon by the relator and already quoted, nor have we been referred to any law of similar character covering them, although it would seem eminently proper that they should be covered by the same provision. It is only necessary to say of the defendant's bill of exceptions that we have considered and discussed the evidence appended to it, and thus give him its full benefit. The certificates of the clerk and judge are without legal effect in other cases, and in accounts other than those contemplated in the statute; and, as we said in Houston vs. the City of New Orleans, are not conclusive of the party's right, even in cases within the statute. They are in such cases, however, sufficient to authorize and require that the claims so certified be registered. If the parish has any valid defense against them it may be urged in another form of action. We have given it and the defendant the benefit of all which are appropriate in this proceeding by mandamus.

It is therefore ordered, adjudged, and decreed that the judgment of the court below be amended so as to disallow, without prejudice to their enforcement according to law, the relator's demand for the registry in their present shape of the items of account for serving road notices, and for notices to jurors and mileage in serving them, and that in all other respects it be affirmed.

It is further ordered and adjudged that the relator pay the costs of appeal and the defendant those of the court below.